OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Carmelo R. is a retarded youngster who was born on July 19, 1969 and entered foster care pursuant to a voluntary placement instrument dated July 11, 1984. (Social Services Law § 384-a.) In this case, a petition to review the foster care status of Carmelo should have been filed in the Family Court by the Commissioner of Social Services of the City of New York (Commissioner) "at least sixty days prior to the end of the month which would constitute the eighteenth month of continuous foster care placement” (Social Services Law § 392 [3] [d]).
Accordingly, the instant foster care review proceeding should have been filed by the Commissioner with the Family Court no later than November 30, 1985.
According to the mandated statutory scheme, the hearing on a foster care review proceeding shall take place "within eighteen months of the date of the original foster care placement” (Social Services Law § 392 [5]).
*54 However, in clear violation of the express statutory mandate, this proceeding was not even initiated until the end of January 1987, over one year late. As in so many instances of late filings, this case has left a legacy of tragedy on a very vulnerable, quite pathetic, youngster. And in what can only be classified as the ultimate in irony, the Commissioner now argues that the instant foster care review proceeding must be aborted in midstream since Carmelo has since turned 18 years of age and, according to the Commissioner, the court is thereby divested of jurisdiction.
For the reasons that follow, the court rejects the Commissioner’s interpretation of the relevant provisions of section 392 of the Social Services Law and holds that where a foster care proceeding is initiated at a time when the subject child is under 18 years of age, jurisdiction continues in the court until a final order of disposition within the meaning of the statute is made.
In order to appreciate the plight of this tragic youngster, and to place the legal issue presented in clear focus, a review of the relevant facts is in order.
After the late filing with the court, the required statutory notices were sent and the matter was scheduled to be heard on February 25, 1987. On that occasion, no caseworker appeared on behalf of the Commissioner and the matter had to be adjourned. On the next court date in March, caseworker William Pallson from Baychester Diagnostic Center, a facility operated by the Commissioner, appeared. He stated that Carmelo was not appropriately placed at Baychester and that he needed a residential treatment center in order to meet his needs. Mr. Pallson reported that a single referral was made to Brooklyn Developmental in 1985 but that they had no beds available. Inexplicably, Baychester was content to allow the matter to rest there. No additional referrals were made although the boy was seen at Queens Developmental in November of 1986.
Hearing this, the Judge presiding assigned the law firm of Lawyers for Children to represent Carmelo and adjourned the proceeding until May 18, 1987. On this adjourned date, the social worker from Baychester failed to appear. There was, however, a representative from the Commissioner’s Brooklyn field office present, a Nathaniel Brown, who candidly stated that Carmelo was not receiving the care he needed at Baychester. He further told the court of his frustration in trying *55 to get a psychiatric and psychological report from Baychester for three years. (It must be borne in mind that Baychester is supposed to be a diagnostic center.) Mr. Brown concluded that Baychester seems to have "a staff problem”. In response, the Judge presiding commented "to put it mildly” and further stated "Well, this is absurd.”
Lawyers for Children asked for a short adjournment to have its psychiatrist see the boy or otherwise try to expedite the referral process. The matter was thereupon adjourned to June 1, 1987.
On the adjourned date, the court heard from Valerie Smart, the clinical supervisor at Baychester. She stated that Baychester is a diagnostic center designed to treat an adolescent population, not the retarded handicapped. Ms. Smart then conceded that when the Commissioner "found there is no where appropriate to place these kids, they seemed to have chosen Baychester as the least undesirable facilities in the City” (emphasis supplied). Concerning Carmelo, she stated "Each time referrals are made, Carmelo is one of the ones who has been there the longest and he is continuously rejected.” Ms. Smart also reported that Baychester is "over the census”, being originally set up for 24 adolescent boys and now allegedly caring for between 55 and 60.
Lawyers for Children thereupon indicated its desire to have Carmelo evaluated by the Office of Mental Retardation Developmental Disabilities (OMRDD) and, to that end, the court notified Pat Bertram of that agency to be present on the next court date which was scheduled for June 29,1987.
Despite notice to Ms. Bertram, she failed to appear in court on June 29, 1987 necessitating yet another adjournment. This time the court ordered that a summons issue for Ms. Bertram. The matter was thereupon put over until July 6, 1987.
When the summons was not served for the July 6, 1987 date, the matter was adjourned to August 10,1987.
On August 10, the Judge presiding reported that his law assistant had received a message from a Richard Wolfe at OMRDD "who called to say that their agency would not be appearing this morning unless the court lets them know by telephone that they absolutely must appear.”
It was, however, determined that, contrary to prior reports, Carmelo had not only not been rejected by OMRDD but, in fact, had never even been evaluated by that agency. The agency agreed to undertake a review of the boy’s case.
*56 The Judge presiding thereupon put the matter over to September 21, 1987 with a direction that a representative from OMRDD be present to report on the status of the boy’s referral.
Up to this point the proceedings were held before another Judge of the court (Hon. M. Holt Meyer), who was subsequently delegated another assignment in another county. On the adjourned date, the undersigned received the case for the first time and was confronted with an application by the Commissioner to withdraw the proceeding on the grounds that Carmelo had since become 18 years of age on July 11, 1987 and that, in the Commissioner’s view, the court now lacks subject matter jurisdiction. The respective attorneys asked for time to brief the issue and, on consent, the matter was marked "decision reserved” as of the date of final submissions, namely, November 17, 1987.
Section 392 (1) of the Social Services Law provides:
"As used in this section, unless otherwise expressly stated or unless the context requires a different interpretation * * *
"(b) 'child’ shall mean a child under the age of eighteen years”.
The Commissioner argues that the statute is clear on its face, requires no interpretation, and obviously limits the court’s authority to children who have not as yet reached their 18th birthday. And, since the Family Court is one of limited jurisdiction, it cannot exceed the powers expressly allocated to it. (Matter of Borkowski v Borkowski, 38 AD2d 752.)
The Commissioner overlooks the introductory language "unless the context requires a different interpretation”. If the divestiture of jurisdiction was to be absolute as the Commissioner argues, there would be no need for or use for such qualifying language.
Section 392 (8) of the Social Services Law provides, inter alia, that "The court may make an order of protection in assistance or as a condition of any other order made under this section. The order of protection may set forth reasonable conditions of behavior to be observed for a specified time by a person or agency who is before the court.” (Emphasis added).
Against the shameful, horrible background of this case, the court may well wish to issue an order of protection on behalf of Carmelo to ensure that the care to which he was entitled three years ago is finally provided to him. Since the child *57 would be the beneficiary of such an order and would almost certainly be named in the order, the context of that section would require the continuation of court jurisdiction beyond the child’s 18th birthday, to have any practical meaning or effect. Such is obvious in this case.
Consider a hypothetical case where the order of disposition is entered one day shy of the child’s 18th birthday. To hold that court jurisdiction ends at age 18 would lead to the absurd result of issuing an order of protection that was valid for merely one day. Furthermore, it would fly in the face of the language of subdivision (8) allowing the order to be issued "for a specified time”.
The interpretation urged by the Commissioner would lead to other results equally absurd. For example, if, by statute, a foster care review proceeding was required to be filed no later than the very day before the child’s 18th birthday, the Commissioner would nevertheless be required to so file even though, because of the notice provisions, the petition would have to be withdrawn on the return day in court.
Or suppose that the initial court day occurs one day before the child’s 18th birthday, the court would have just one day to analyze the pleadings, assign a lawyer, hear the case, and render a decision. And unless all this was accomplished in that one day, the court would lose jurisdiction.
Perhaps, the worst case scenario is something akin to what occurred here. It is hardly a secret and requires no recitation of statistics to state unequivocally that the Commissioner is frequently late in filing its proceedings as required by law. Without in any way imputing any unlawful intent on the part of the Commissioner, should a child suffer because the Commissioner fails to comply with the law?
The Commissioner cites section 1013 (c) of the Family Court Act governing jurisdiction of the court in child protective proceedings. There, the Legislature specifically provided that "In determining the jurisdiction of the court under this article, the age of the child at the time the proceedings are initiated is controlling.” He concludes in his brief that "the fact that section 1013 specifically mentions that which section 392 omits only further strengthens the point made in my memorandum.”
But sweeping references to the various articles of the Family Court Act are not helpful in deciding the issue presented *58 herein. For example, several sections of the Family Court Act authorize the issuance of an order of protection in language similar to that used in section 392 (8) of the Social Services Law.[1] Each article of the Family Court Act that so authorizes the issuance of orders of protection also provides a specific remedy, namely, a jail term of up to six months, for willful disobedience to the order.[2] Yet section 392 (8) of the Social Services Law mentions nothing in the way of the appropriate sanction for disobedience to the mandate. To follow the Commissioner’s reasoning, the failure of the Legislature to provide for a sanction for disobedience to an order specifically denoted "an order of protection” could well be interpreted to mean that no sanction was intended, otherwise it would have been stated.
The court rejects the Commissioner’s analogy to the Family Court Act and holds that the correct legislative intent of section 392 (1) (b) of the Social Services Law can be ascertained by a commonsense reading of that statute as a whole.
In the instant case, had the Commissioner filed his papers in a timely fashion as required by law, the precise issue now before the court would not be under consideration and, not incidentally, Carmelo may have been accorded the treatment to which he is entitled under law.
Statutes will not be interpreted in such a way as to lead to absurd results. (McKinney’s Cons Laws of NY, Book 1, Statutes § 113.) The position urged by the Commissioner would not only lead to absurd results but actually encourage and reward noncompliance with the law. The victims would be this State’s neediest children. The Legislature could not have intended such a result.
In reaching its decision herein, the court will not venture beyond what is necessary to decide this particular case. To that end, the court holds that where a child is under the age of 18 at the time the foster care review proceeding is initiated, the court is not divested of jurisdiction merely because the subject child becomes 18 years of age during the pendancy of the action. The court will not reach the constitutional issues raised by Lawyers for Children.
*59 The motion by the Commissioner to withdraw the proceeding is denied and the matter is calendared for January 27, 1988 at 2:30 p.m. for further proceedings. The clerk shall notify OMRDD to have a representative in court on that date to report on the status of Carmelo’s referral to that agency.

. See generally, Family Court Act §§ 446, 551, 759, 842 and 1056.

. See generally, Family Court Act §§ 454, 548, 780, 846-a and 1072.